IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
<u>EASTERN DIVISION</u>

| | |
|---|---|
| MACK W. CROOK, Jr.., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 05-PWG-192-E |
| ) | |
| WAL-MART STORES EAST, L.P., ) | |
| ) | |
| Defendant ) | |

<u>MEMORANDUM OF OPINION</u>

Mack W. Crook, Jr., plaintiff herein, filed this action against Wal-Mart Stores East, L.P., defendant herein, in state court.  The action was removed to federal court pursuant to 28 U.S.C. § 1441(a).  This court has jurisdiction under 28 U.S.C. § 1332 (a)(1) (diversity of citizenship). The amount in controversy exceeds $75,000.00.  The parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c) and L.R. 73.2.  This matter is before the court for consideration of the defendant's motion for summary judgment.  (Doc. #10 ).

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Rule 56, *Federal Rules of Civil Procedure*.  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim.  *See*

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

While *pro se* pleadings are construed more liberally than the pleadings of a represented party, *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002), *cert. denied*, *Newbold v. Sasser*, 538 U.S. 930 (2003), *Loren v. Sasser*, 538 U.S. 1057 (2003), "a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990), *cert. denied*, 500 U.S. 933 (1991). *Pro se* litigants must be provided notice of the rules attendant to a motion for summary judgment, including the need to file affidavits and material and the risks of failure to respond. *Griffith v. Wainwright*, 772 F.2d 822, 825 n.6 (11th Cir. 2005). Despite such notice by the court (doc. # 18), Mr. Crook elected not to submit affidavits but argued that at some future time he can subpoena various witnesses to testify and produce

documents at trial. (Doc. # 20). Although he submitted certain exhibits, he generally failed to explain their significance. As a result of plaintiff's failure to submit counter-affidavits and/or documents establishing a genuine issue of material fact to be litigated at trial and for reasons set forth below, defendant is entitled to summary judgment in its favor.

The following relevant facts are undisputed or, if disputed, viewed in the light most favorable to plaintiff, the non-moving party. In early 2003, Southeast Capital Investments, Inc. ("SECI") contracted with Hugo Isom, a Birmingham real estate broker, to procure and facilitate the purchase of a parcel of real property located at 5614 McClellan Boulevard, Anniston, Alabama ("the Property"). (Hoffman's Dep. Exhibit A, at ¶¶ 2-3). SECI wanted the Property because it believed that defendant Wal-Mart Stores East, L.P. ("Wal-Mart") would build a new SuperCenter in the vicinity which would cause the Property's value to rise. (*Id.* at ¶ 4). Plaintiff Mack W. Crook, Jr., owned the Property and operated a Christian bookstore on the premises. (*Id.* at ¶5; Doc. # 10 Exhibit B, at 18).

In early 2003, Mr. Isom offered to buy the Property from Mr. Crook on behalf of what Mr. Isom referred to only as an Atlanta-based client. Mr. Crook refused the offer (Doc. # 10 Exhibit B, at 45). Subsequently, Mr. Isom and his associate, Lindsey Howard, approached Mr. Crook with a second offer to buy the Property. (*Id.*). Mr. Crook asked Mr. Isom how much time he would have to relocate his business if he sold. Mr. Crook suggested that he should be allowed three to twelve months after the closing of the transaction to move. (*Id.* at 45-46). Mr. Isom told Mr. Crook that he might have a year to move from the Property or that his client might rent the property back to Mr. Crook and not require him to move at all. (*Id.* at 46). Mr. Crook did not receive any document from

3

SECI committing to a specific period of time in which Mr. Crook could vacate the premises. (*Id.* at 64).

On December 14, 2003, Mr. Crook and SECI executed a "Sale and Purchase Agreement for Commercial Land" ("the Agreement") in which Mr. Crook agreed to sell the Property to SECI for $565,000.00. (*Id.* at 41, Doc. # 10 Exhibit 1 to Crook Depot). The Agreement made no provision for Mr. Crook's continued possession of the Property after closing, nor did it contain any reference to Wal-Mart. (Doc. # 10 Exhibit B, at 60-61).

Mr. Crook did not retain a lawyer to review the Agreement. In his deposition, Mr. Crook explained:

> Q. What's the reason you didn't have a lawyer review it?
>
> A. When somebody make you a real estate deal, an offer, you don't never get a lawyer involved. You don't have time to get a lawyer involved .
>
> Q.  ...What do you mean you don't have time to get a lawyer?
>
> A. This is simple. You don't need a lawyer
>
> Q. What's simple?
>
> A. This contract. This offer is simple.
>
> Q. Well, let me ask you – this contract is simple?
>
> A. To me it is. If everybody do what they say they're going to do.

(*Id.* at 49).

Mr. Crook negotiated the sales price stated in the Agreement, marking through the purchase price of $465,000.00 and writing in $565,000.00. (*Id.* at 41, 47-48, Doc. 10, Exhibit 1 to Crook Dep.). Mr. Crook testified that he understood the meaning of the Agreement's terms (*Id.* at 51-52).

4

On March 3, 2004 SECI assigned its rights and duties under the Agreement to Wal-Mart as it was authorized by the Agreement. (Hoffman Dec. at ¶ 8, Exhibit 1 to Hoffman Dec.) . Subsequent to the assignment, Wal-Mart retained SECI and Mr. Isom as its broker and sub-broker, respectively, for the Property.  (*Id.* at ¶ 9).  In late April 2004, Mr. Isom called Mr. Crook about the closing date for the transaction, and  Mr. Isom and Mr. Crook agreed that the closing would take place on May 10, 2004.  (Crook Dep., at 32-54).  On May 3, 2004, SECI's President, Michael Hoffman, called Mr. Crook to remind him that, under the terms of the Agreement, he was to deliver possession of the Property on the day of closing. (*Id.* at 55- 56).  Mr. Crook told Mr. Hoffman that he would not sell the Property unless he was given at least three months after closing to move. (*Id.* at 56).  On May 6, 2004,  Mr. Hoffman, Mr. Isom, and Mr. Crook held a meeting at which  Mr. Hoffman offered to give Mr. Crook two weeks after closing to move if he would sell, and Mr. Crook agreed.  (*Id.* at 58- 59).

On May 10, 2004, Mr. Crook and Wal-Mart closed on the sale of the Property (*Id.* at 59, 64). At the closing, Mr. Crook and Wal-Mart executed a lease ("the Lease"), by which Mr. Crook retained possession of the Property for an additional two weeks in exchange for including Wal-Mart as an "additional insured" on his bookstore's liability insurance policy.  (*Id.* at 67, 70-71; Ex. 3 to Crook Dep.).[1]  Two weeks later, Mr. Crook abandoned possession of the Property. (Crook Dep. 69).  Mr. Crook did not have another site available for use as a bookstore and he has not reopened his bookstore. (*Id.* at 18).  Mr. Crook later sent invoices to Wal-Mart to recover the costs he incurred for moving and storing his bookstore's inventory, and for revenue lost as a result of selling the

---

[1/]   In his March 8, 2006 unsworn response (doc. #20, p. 3), Mr. Crook stated that he did not sign the lease agreement; however, in his deposition testimony, Mr. Crook acknowledged that he signed the agreement. (Crook Dep. p. 70; Exhibit 3 to Crook dep.)

Property. (*Id.* at 72). Wal-Mart did not pay the invoice. (*See* Complaint/"Explaination" ¶ 2). On December 10, 2004, Mr. Crook filed this complaint. Mr. Crook alleges that even prior to assignment of the Agreement to Wal-Mart, Mr. Isom, Ms. Howard, and Mr. Hoffman were acting as Wal-Mart's agents, and, in their agency capacities, when they allegedly lied to him about (1) who the prospective buyer of the Property was, and (2) how much time he would be afforded to abandon the Property after closing. (*See Id.* at 60-62, 84-86).

I.  Breach of Contract

In support of the motion for summary judgment, Wal-Mart argues that (1) Mr. Crook has not alleged that Wal-Mart breached any provision of the agreement; (2) the merger clause of the Agreement and the Alabama Statute of Frauds bars any breach of contract claim premised on prior oral agreements concerning the sale of the Property; and (3) Wal-Mart cannot be held liable for the pre-assignment statements and acts of Mr. Isom, Ms. Howard, and Mr. Hoffman because they were not agents of Wal-Mart when the alleged representations concerning how long he would have to vacate the premises were made.

A plaintiff establishes a breach of contract claim by showing: "(1) the existence of a valid contract binding the parties in the action , (2) [the plaintiff's] own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Ex parte Coleman*, 861 So.2d 1080, 1085 (Ala. 2003), quoting *Southern Med. Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995) and *State Farm Fire & Cas. Co. v. Slade*, 747 so.2d 293, 303 (Ala. 1999).

Mr. Crook has not identified a contractual provision he alleges was breached by Wal-Mart. Although Mr. Crook argues that Mr. Isom and Ms. Howard made an oral promise concerning the length of time he would have to vacate the property, he has not presented any evidence to suggest

that at the time the statements were made (prior to the Agreement) Mr. Isom and Ms. Howard were agents of Wal-Mart. Further, the Agreement contained a merger clause which precludes Mr. Crook from relying on any oral representations made prior to the Agreement as support for his breach of contract claim.

Merger clauses are enforceable under Alabama contract law. "Although a merger clause does not bar the admission of parol evidence to prove fraud in the inducement of the contract, it is properly used to ensure that preliminary negotiations, whether oral or written, are either memorialized in the final contract or are not considered part of it." *Wood v. Phillips*, 849 So. 2d 951, 959 (Ala. 2002), quoting *Infiniti of Mobile, Inc. v. Office*, 727 So. 2d 42 (Ala. 1999). In the absence of ambiguity and when fraud as an inducement has been ruled out, parol evidence will not be introduced to interpret the express terms of the written contract. *Id.* "As long as the contractual terms are clear and unambiguous, questions of their legal effect are questions of law." *Winkleblack v. Murphy*, 811 So. 2d 521, 525 (Ala. 2001), citing *Commercial Credit Corp. v. Leggett*, 744 So. 2d 890 (Ala. 1999).

The merger clause of the Agreement provides, in pertinent part:

> This Agreement constitutes the entire agreement of the parties with respect to the Property described herein. This Agreement may not be amended or modified orally. All understandings and agreements heretofore between the parties with respect to the Property are merged in this Agreement which alone fully and completely expresses their understanding. Handwritten and initialed provisions shall supersede typewritten provisions. No waiver of any provision of this Agreement shall be effective unless it is in writing and signed by the party against whom it is asserted and any such written and any such written waiver shall only be applicable to the specific instance to which it relates and shall not be deemed to be a continuing or future waiver . . .

>  This Agreement may not be amended, modified, altered or changed in any respect whatsoever except in writing duly executed by the parties hereto . . .

(Doc. #10, Exhibit B, Part 1B, "Sale and Purchase Agreement for Commercial Land," ¶ 22).

The Agreement entered into in December, 2003 also expressly and unambiguously provided for Mr. Crook to abandon the property at closing:

> 4. **Conveyance and Title.**  Subject to the terms and conditions of this Agreement and for the consideration set forth herein, *Seller agrees to convey, transfer, assign, sell and deliver to Buyer at Closing all of the following*:
>
>  . . .
>
>  B. All of Seller's right, title and interest, if any, in and to all easements, privileges, licenses, reservations, permits, approvals, authorizations, rights-of-way, consents and other use rights, interests and privileges owned or used by Seller in connection with the Property; and
>
>  C. Possession of the Property, unencumbered by any leasehold and/or possessory interest of any kind by any third party unless otherwise expressly stated in this Agreement.
>
>  . . .
>
> 9. **Closing.**  The date of closing shall be determined by Buyer and shall be within 60 days of the expiration of the terms specified in paragraph 6.

(Doc. 10, Exhibit B, Part 1B, "Sale and Purchase Agreement for Commercial Land," ¶¶ 4 & 9 (emphasis added)).

The Agreement expressly and unambiguously provides for Mr. Crook to transfer possession of the Property at closing. Accordingly, parol evidence of any prior discussions concerning the underlying subject matter of the Agreement is not admissible to prove fraud as an inducement. *See Casey v. Travelers Insurance Co.*, 585 So. 2d 1361, 1364 (Ala. 1991). "Fraud in the inducement

consists of one party's misrepresenting a material fact *concerning the subject matter of the underlying transaction* and the other party's relying on the misrepresentation to his, hers, or its detriment in executing a document or taking a course of action." *Johnson Mobile Homes of Alabama, Inc. v. Hathcock*, 855 So. 2d 1064, 1067 (Ala. 2003), quoting *Oakwood Mobile Homes, Inc. v. Barger*, 773 So. 2d 454, 459 (Ala. 2000) (original emphasis).  "[T]he fraud required to make this showing must be 'inherent fraud - that is, an intention not to perform operating from the inception of the transaction,' [ ] and a mere refusal to perform a promised act is insufficient evidence of such inherent fraud to allow equity's intervention." *Casey*, 585 So. 2d at 1364 (Ala. 1991), citing *Durham v. Harbin*, 530 So. 2d 208, 212 (Ala. 1988).

Mr. Crook does not allege that Wal-Mart intended not to perform operating from the inception of the transaction, rather he alleges that Wal-Mart failed to perform a promised act, that is, Wal-Mart failed to give him sufficient time to move his bookstore.  Accordingly the parol evidence would, at best, show a refusal to perform a promised act and is insufficient to show the inherent fraud required to meet the fraud as an inducement exception to the interpretation of the merger clause.

Further, where, as here, the defendant's liability is based on agency, the plaintiff must present sufficient evidence of such agency. *John Deere Constr. Equip. Co. v. England*, 883 So. 2d 173, 178 (Ala. 2003).

> The test to be applied in determining whether there existed an agency relationship based on actual authority is whether the alleged principal exercised a right of control over the manner of the alleged agent's performance.  Control must be proven; and proof of control requires

9

>more than proof of a mere right to determine if the person claimed to
>be an agent is conforming to the requirements of a contract.

*Id.*

Although Mr. Crook alleges that an agency relationship existed between Mr. Isom, Ms. Howard, and Mr. Hoffman and Wal-Mart prior to the Agreement and assignment of the agreement, he has failed to provide any evidence to support his factual assertion.[2] Therefore, any oral representations concerning vacating the Property made by Mr. Isom, Ms. Howard or Mr. Hoffman prior to the assignment of the Agreement are not binding on Wal-Mart.

II.     Fraud

Wal-Mart argues that summary judgment on the fraud claim is appropriate because (1) the Statute of Frauds bars tort claims based on oral representations within its scope; (2) Mr. Crook did not reasonably rely on the pre-Agreement oral representations, and (3) Wal-Mart cannot be held liable for the statements of Mr. Isom, Ms. Howard or Mr. Hoffman.

>The elements of a misrepresentation [or fraud] claim are 1) a misrepresentation of material fact, 2) made willfully to deceive, recklessly, without knowledge, or mistakenly, 3) which was justifiably relied on by the plaintiff under the circumstances, and 4) which caused damage as a proximate consequence. Ala. Code 1975, § 6-5-101.

*Foremost Ins. Co. v. Parham* 693 So.2d 409, 422 (Ala. 1997).[3]

---

[2] It is undisputed that subsequent to the assignment of the Agreement SECI and Mr. Isom were retained as Wal-Mart's broker and sub-broker.

[3] Any "lie" to Mr. Crook about the identity of the prospective buyer cannot give rise to a cause of action for fraud because Mr. Crook testified that he was aware a month before he signed the Agreement that Wal-Mart wanted his property. (Id. at 42-43, 53, 59-60); therefore, the alleged misrepresentation concerning the prospective buyer was not relied upon.

Although the *Foremost* court referred to "justfiable reliance," it specifically held that the standard was "reasonable reliance" which allowed the factfinder to consider all of the circumstances, including the "mental capacity, educational background, relative sophistication, and bargaining power of the parties." 693 So.2d at 421. The reasonable reliance standard also allowed "the trial court to enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms." *Id*.

"In order to recover for misrepresentation, the plaintiff['s] reliance must . . . have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercises ordinary care would have discovered the true facts, the plaintiffs should not recover." *Alpine Bay Resorts, Inc. v. Wyatt*, 539 So. 2d 160, 163 (Ala. 1988), quoting *Torres v. State Farm Fire & Cas. Co.,* 438 So.2d 757, 758-59 (Ala. 1983). See also, *Foremost Ins. Co., v. Parham*, 693 So.2d 409 (Ala. 1997). Bedwell *Lumber Co. v. T & T Corp.*, 386 So. 2d 413, 415 (Ala. 1980). "If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, "*volenti non fit injuria*"." *Oakwood Mobile Homes, Inc. v. Barger*, 773 So. 2d 454, 461 (Ala. 2000), quoting *Torres, supra.*

Mr. Crook's reliance on the pre-Agreement representations concerning when he would have to vacate the Property was not reasonable under the circumstances. While a period of time between three and twelve months was discussed, a more specific amount of time was never agreed upon. The representations occurred eight to twelve months prior to the execution of the Agreement. (Crook depo., pp.45-46). The representations were contrary to the terms of the subsequent Agreement

11

which expressly provided that the seller would convey possession of the Property to the buyer at closing.  Although Mr. Crook renegotiated the sale price and  obtained an additional $100,000.00 over the amount initially provided for in the agreement, he did not  attempt to renegotiate when he would have to transfer possession of the Property.  Mr. Crook has been buying and "flipping" property for twenty years. (Crook depo., p.21). In addition, Crook is a former realtor. (Crook depo., p.38).  Based on these circumstances, plaintiff's reliance on pre-Agreement representations was not reasonable.

Also as previously discussed, Wal-Mart cannot be held liable for either breach of contract or fraud based on  the pre-assignment representations of Mr. Isom, Ms. Howard, and Mr. Hoffman who prior to assignment  were all working for SECI or as agents for SECI and not as agents of Wal-Mart.[4]

---

[4]    Further, plaintiff's claims are barred under the Alabama Statute of Frauds which provides in pertinent part:

> In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
> ...
> (5)     Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller . . .

Ala. Code 1975 § 8-9-2 (5).  The alleged oral agreement between Mr. Crook and Mr. Isom concerning the time allowed for abandonment of the Property, which took place prior to the signing of the Agreement, would be prohibited by the Alabama Statute of Frauds.  Even in the unlikely event that the promise of a lease for "a whole year" (Crook depo., p.46) could be separated from the sales agreement and construed as falling within the exception language of the Statute of Frauds ("except leases for a term not longer than one year"), for the other reasons expressed in this opinion, defendant is entitled to summary judgment on the breach of contract claim.

When "an element of a tort claim turns on the existence of an alleged agreement that cannot, consistent with the Statute of Frauds, be proved to support a breach-of-contract claim, the Statute of Frauds also bars proof of that agreement to support the tort claim.  Were the rule otherwise, the Statute of Frauds could be effectively avoided by the simple wording of the complaint." *Holman v. Childersburg Bancorporation, Inc.*, 852 So. 2d  691, 701 (Ala. 2002).  Mr. Crook relies on the same facts to support his fraud claim that he

Based on the foregoing, defendant's motion for summary judgment is due to be granted. A final judgment consistent with this Memorandum of Opinion will be entered contemporaneously herewith.

As to the foregoing it is SO ORDERED this the 13th day of July, 2006.

*[signature: Paul W. Greene]*

PAUL W. GREENE
CHIEF MAGISTRATE JUDGE

---

relies on to support his breach of contract claim. Because under the Statute of Frauds, the pre-Agreement representations could not be used to support the breach of contract claim, they can not be used to support the fraud claim.